# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| JAMIE MILES, | : | CIVIL ACTION |
| --- | --- | --- |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| THE CITY OF PHILADELPHIA, | : | |
| et al., | : | No. 17-414 |
| Defendants. | : | |
| | : | |

FILED
MAY 3 1 2018
KATE BARKMAN, Clerk
By_____Dep. Clerk

## MEMORANDUM OPINION

**Timothy R. Rice**                                                                            **May 30, 2018**
**U.S. Magistrate Judge**

      Plaintiff Jamie Miles was terminated from her position as a Philadelphia police officer in October 2015. She has sued Defendants, the City of Philadelphia and former Philadelphia Police Commissioner Charles Ramsey (collectively, the "City"), for: (1) discrimination, retaliation, and the creation of a hostile work environment in violation of Title VII of the Civil Rights Act; and (2) violation of the Equal Protection Clause of the Fourteenth Amendment. The City seeks summary judgment, asserting Miles's claims are barred by a prior settlement agreement and release, time-barred, or not supported by the evidence. See S.J. Mot. (doc. 22).

      The City's motion is granted. Miles's Title VII claims are dismissed because: (1) any claims for discrete discriminatory or retaliatory acts that occurred before December 24, 2014 are barred by Miles's prior settlement agreement and release and Miles's failure to file a timely claim with the Equal Employment Opportunity Commission ("EEOC"); and (2) she has failed to present sufficient evidence to enable a reasonable jury to find that the City fired her for discriminatory reasons or subjected her to a hostile work environment. Miles's Equal Protection

claims are dismissed because: (1) she has failed to show was fired because of a discriminatory policy or custom by the City; and (2) Commissioner Ramsey is entitled to qualified immunity.

## I.     Legal Standard

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The evidence and any inferences from the evidence must be viewed in the light most favorable to the non-moving party. See Ray v. Warren, 626 F.2d 170, 173 (3d Cir. 2010). If reasonable minds could conclude that there are sufficient facts to support a plaintiff's claims, summary judgment should be denied. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). It should be granted if no "reasonable jury could return a verdict for the nonmoving party" based on the evidentiary record. Reedy v. Evanson, 615 F.3d 197, 210 (3d Cir. 2010).

## II.    Facts Most Favorable to Miles

Miles began working for the Philadelphia Police Department in April 2003 and was initially assigned to the 23rd Police District. See S.J. Mot., Ex. 3, Miles Service Record. In March 2008, Miles was transferred to the Community Relations Unit ("CRU"), where she was responsible for educating Philadelphia school students about the dangers of drugs and gangs. Id.; see also S.J. Mot., Ex. 1, 5/8/2013 AAA Award at 2-3.

While working in the CRU, Miles alleged that she was sexually harassed by a supervisor and in June 2011, Miles sued the City, Commissioner Ramsey, and several other City employees for sexual discrimination and retaliation. See S.J. Mot., Statement of Facts ¶ 1;[1] Resp. to Undisputed Fact (doc. 23-1) ¶ 1; Miles v. City of Phila., E.D. Pa. 11-cv-4040 ("2011 Case"),

---

[1]     Although the City has not numbered the paragraphs in its statement of facts, Miles has responded to each paragraph according to their order and I refer to them in the same way. See Resp. to Undisputed Facts at 1 n.1.

2

Compl. (doc. 1). The case settled and Miles agreed to release the defendants from any claims she had as of July 24, 2013.[2] See S.J. Mot., Statement of Facts ¶ 4; Resp. to Undisputed Fact ¶ 4; 12/31/2013 Op.

Around the same time Miles filed the 2011 Case, the Police Department charged her with conduct unbecoming an officer and neglect of duty for falsifying records about providing drug and gang avoidance programs at a Philadelphia school on various dates. Compl. ¶ 7; 5/8/2013 AAA Award at 1-4. Following a hearing, the Police Board of Inquiry ("PBI") concluded Miles was guilty and recommended she be dismissed or "transferred if not dismissed." 5/8/2013 AAA Award at 4. In November 2011, Commissioner Ramsey dismissed Miles. Id.

The Fraternal Order of Police, Lodge No. 5 ("FOP") grieved Miles's dismissal as being unfair, inequitable, and disparate. Id. at 7. On May 8, 2013, an arbitrator determined Miles committed serious misconduct by deliberately falsifying records and lying about her whereabouts. Id. at 8. The arbitrator, however, also found that the City did not have just cause to terminate Miles because there was no evidence that the City had ever terminated a police officer for a single instance of falsifying records or similar conduct, such as "stealing time" by leaving work shifts early. Id. at 9. "After considering the totality of the circumstances [and] balancing the seriousness of the misconduct and the extenuating circumstances," the arbitrator concluded that Miles "shall be reinstated to service with her time off treated as a disciplinary suspension without pay." Id. at 10. The arbitrator noted that the parties should confer about the best position for Miles and that Miles's "reinstatement [was] conditioned upon her satisfying all of the applicable certifications and requirements of her position." Id.

---

[2] After settling, Miles refused to sign the release and claimed her attorney lacked authority to settle the case. See 2011 Case, 12/31/2013 Op. (doc. 76) at 3-4. Magistrate Judge Carol Sandra Moore, however, found that the settlement agreement and release were enforceable and Miles never appealed that decision. Id. at 4-7; see also Resp. (doc. 23) at 4.

3

On June 26, 2013, the Police Department reinstated Miles as a police officer in the 18th Police District. See Miles Service Record. Miles contends that, following her return, she was subject to gender discrimination and retaliation as a result of her 2011 Case. Compl. ¶¶ 10-21. She testified that she had "a general fear" of going to work every day because [she] did not know what she was going to be charged with [or] written up for." S.J. Mot., Ex. 4, 10/26/2017 Miles Dep. at 75-76.

Miles explained that, shortly after her reinstatement, she was charged with being absent without leave ("AWOL"), a disciplinary action previously imposed by a defendant in the 2011 Case. See id. at 54-57. Although she retained an attorney to represent her on the AWOL charge, it was dismissed before a PBI hearing was held. Id. at 57-58.

Miles also testified that her 18th District supervisor, Lieutenant Michael Reilly, sent officers to her home to check on her when she called out sick and had her sign two counseling memoranda stating she was not home when "sick checked." Id. at 5-9, 19-20. Miles said that, on one occasion, the Department knew she was sick because she was sent home sick the previous day. Id. at 6-8. The second time, she said she had called the Police Department and obtained permission to leave her home for an appointment. Id. at 13-14. Miles testified that she noted objections on at least one of the counseling forms, but she has not presented that form or any other evidence to support her claim that the sick checks were unwarranted. Id. at 20-21. The City has presented a December 2013 "sick leave violation" memorandum signed by Miles, without any written objections, and Captain Bellamy, rather than Lieutenant Reilly. S.J. Mot., Ex. 18, 12/14/13 Memorandum. Miles testified that she was never disciplined for the two sick leave violations. See 10/26/2017 Miles Dep. at 9.

4

Miles said Reilly continuously checked on her while she was on duty, denied her overtime for not buying tickets to the FOP Thrill Show, marked her late when she had received approval to use vacation time for her delay, and threatened to ticket her car for an expired inspection sticker. Id. at 10-11, 15-16, 23-24. Miles has not presented any evidence of this conduct beyond her testimony and inadmissible hearsay statements by others. See 10/26/2017 Miles Dep. at 14 (she was told by another officer that Reilly had said he was going to ticket her car for an expired inspection), 15 (someone told her that Reilly said she was denied overtime for not buying Thrill Show tickets).

In October 2013, Sergeant McCoy presented Miles with a counseling memorandum that stated she was late on nine dates between August 6 and October 30, 2013, and explained that her attendance needed to be rectified immediately or formal discipline could result. See S.J. Mot, Ex. 17, 10/30/2013 Counseling Form. Miles was marked late numerous times after October 30, but she did not receive another counseling memorandum or any discipline for being late. See S.J. Mot., Ex. 5, Miles DARS Listing; 10/26/2017 Miles Dep. at 25.

Miles contends that Officer Burns, a male officer in the 18th District, was frequently late, but not marked late like she was. See 10/26/2017 Miles Dep. at 31. She believed this based on "conversations with him, other co-workers, and just knowing the—the common practice that's—that's applied every single day." Id. Burns's attendance records for June 26, 2013 to August 16, 2013, show he was marked late once during that time period. See S.J. Mot., Ex. 6, Burns DARS Listing. There is no evidence, other than Miles's testimony, that these records are inaccurate.

In November 2013, Miles submitted a hardship memorandum to her Commanding Officer, requesting a new work shift. See S.J. Mot., Ex. 16, Hardship Memorandum. Miles explained that she was experiencing problems traveling the 25 miles from her home in the 8th

5

Police District to work in the 18th District and she believed that a different work shift would resolve the issue. Id. This request was denied with a notation that Miles did not meet the criteria for a shift change after the bidding had ended. Id.

Around the same time, Miles was involved in an incident while she was off-duty that resulted in a civil rights lawsuit being filed against her. See S.J. Mot., Exs. 19, 20. The Internal Affairs Department ("IAD") investigated the matter and notified Miles in September 2014 that: (1) she was exonerated from allegations of false arrest by the complainant; (2) the complainant's allegations of missing property were unfounded; and (3) the Department violations for not calling 911 regarding the situation based on her off-duty status were sustained. See S.J. Mot., Exs. 19, 20; 10/26/2017 Miles Dep. at 72. Miles testified that she later received a letter from IAD sustaining the complainant's allegations of false arrest and missing property. 10/26/2017 Miles Dep. at 72-75. She called IAD and was told that the letter may be a mistake and never received any other information or discipline about the matter. Id.

On January 24, 2014, Miles suffered a work-related injury and was placed on injured-on-duty status for approximately four months. See S.J. Mot., Statement of Facts ¶ 6; Resp. to Undisputed Fact ¶ 6. On June 2, 2014, Miles returned to unrestricted duty in the 2nd Police District. See S.J. Mot., Statement of Facts ¶ 6; Resp. to Undisputed Fact ¶ 6. Around that time, she tried to make a citizen complaint against her boyfriend, fellow police officer Michael Winkler, for domestic abuse. 10/26/2017 Miles Dep. at 42-43. An officer in the IAD told Miles that he could not accept her complaint because she was a police officer and needed to go through her captain and supervisors. Id. at 43-44.

6

In September 2014, Miles reported the domestic issues with Winkler to her supervisor, who referred the matter to the IAD. Id. at 47-49. She was interviewed by the IAD, but they limited the interview to one incident. See 10/26/2017 Miles Dep. at 47-48, 64.

In March 2015, Miles sent a memorandum to her Commanding Officer, alleging she had been retaliated against and subject to a hostile work environment since returning to work in 2013 and seeking permission to file EEOC claims. See S.J. Mot., Ex. 14 at CITY2441. After interviewing Miles about her allegations that same month, the IAD initiated an investigation into her claims against Winkler. See id.; S.J. Mot., Ex. 7, 10/02/15 Internal Investigation IAD #15-1038 at CITY2249. The investigation included a review of evidence produced by Miles, interviews with Miles and Winkler, and attempts to obtain information from other potential witnesses. See id. In October 2015, the IAD concluded that Miles's allegations against Winkler could not be sustained because they could not be proved or disproved. Id. at CITY2258-2259.

In September 2015, a PBI hearing was held on charges that Miles had again engaged in conduct unbecoming a policy officer by knowingly and willingly making a false entry on a department record or report and abusing her authority. See S.J. Mot., Ex. 8, 12/5/2016 AAA Award at 2. The Board found Miles not guilty of abusing her authority, but guilty of knowingly and willingly making a false entry on a department record or report, and recommended she be suspended for 20 days. See Resp., Ex. E, 9/8/2015 PBI Hearing Findings. Upon review, Commissioner Ramsey found Miles guilty of both charges and imposed a 30-day suspension followed by a dismissal. See id. Commissioner Ramsey terminated Miles on October 15, 2015. See S.J. Mot., Statement of Facts ¶ 18; Resp. to Undisputed Fact ¶ 18.

The FOP grieved Miles's termination, asserting the Department did not have just cause to terminate her. See 12/5/2016 AAA Award at 2. During an arbitration hearing, the parties

7

presented evidence showing that Miles's boyfriend and daughter were involved in a minor "fender bender" with a neighbor on May 28, 2014. See id. at 3. Miles was not present at the time and shortly after the accident, a police officer filed a report in the 8th Police District, where the accident occurred, stating that Miles's boyfriend struck the neighbor's car. See id. at 4. Four days later, Miles went to the 18th Police District and presented the on-duty officer with a police report stating that the neighbor struck her boyfriend's car. See id. at 4, 8. This conduct violated police policy requiring reports to be filed in the District where they occurred. See id. at 5-6. Deputy Commissioner Richard Ross recommended that Commissioner Ramsey terminate Miles because her conduct jeopardized the credibility of the Police Department and she had already been found guilty of similar misconduct. See id. at 5-6.

The arbitrator denied the FOP's grievance. Id. at 14. He explained Miles "was in violation of departmental policy, with regard to falsification of an accident report and with respect to her abuse of authority. . . ." Id. at 13. The arbitrator also found Commissioner Ramsey had just cause to terminate Miles as she had "been found to have falsified public documents twice," demonstrating that "she is no longer worthy of the public's trust." Id. at 14.

Miles filed a formal EEOC charge against Defendants on October 20, 2015. See S.J. Mot., Statement of Facts ¶ 18; Resp. to Undisputed Fact ¶ 18. After receiving a right-to-sue letter from the EEOC, she initiated this lawsuit. See Compl. ¶ 21.

### III. Discussion

#### A. Claims Related to Conduct Before July 25, 2013

The City argues, and Miles agrees, that she cannot bring any claims against the City for conduct before July 25, 2013, based on her settlement of the 2011 Case and agreement to release

8

the City from any such claims. See Resp. at 4. Therefore, any claims concerning conduct before July 25, 2013 are dismissed.

### B. Claims Related to Conduct Before December 24, 2014

The City argues that Miles's claims for conduct that occurred before December 24, 2014, are time-barred because she did not file her EEOC charge within 300 days of such conduct.

A plaintiff must file a charge with the EEOC within 300 days "after the alleged unlawful employment practice occurred."[3] 42 U.S.C. § 2000e-5(e)(1). When a plaintiff fails to file an EEOC claim within 300 days of an alleged discriminatory act, she cannot maintain a cause of action based on that discrete act. See Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 113 (2002) ("discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges"). A plaintiff, however, may rely on that discrete act to support a hostile work environment claim that includes an act that occurred within 300 days of the EEOC filing. See id. at 115-18 ("Provided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment claim may be considered by a court for the purposes of determining liability.").

Because Miles filed her EEOC charge against the City on May 20, 2015, she can bring claims only for discrete acts of discrimination or retaliation that occurred within 300 days of that date, i.e., on or after December 24, 2014. Any claims based on discrete acts of discrimination or retaliation that occurred before December 24, 2014 are time-barred. See Morgan, 536 U.S. at 113. Thus, to the extent Miles is bringing independent claims for discrimination based on

---

[3] The charge of discrimination must be filed within 180 days of the alleged unemployment practice or within 300 days if the claim is made in a state, like Pennsylvania, with an entity with the authority to grant or seek relief with respect to the alleged employment discrimination. 42 U.S.C. § 2000e-5(e)(1); Johnson v. City of Phila., No. 08-1894, 2009 WL 2914364, at *5 (E.D. Pa. Sept. 10, 2009).

9

Lieutenant Reilly's actions while she worked in the 18th District between June 2013 and January 2014,[4] or the IAD's failure to investigate her complaints against Winkler between June and December 2014, those claims are dismissed.[5] Miles, however, may rely on such actions to support her hostile work environment claim because that claim includes her October 2015 termination, which was within the 300-day window.

### C. Gender Discrimination

The City contends it is entitled to summary judgment on Miles's claim that she was fired because of gender discrimination.

To establish a prima facie case of discrimination, Miles must show: (1) she is a member of a protected class; (2) she was qualified for the position she sought to retain; (3) she suffered an adverse employment action; and (4) the action occurred under circumstances giving rise to an inference of intentional discrimination. See Makky v. Chertoff, 541 F.3d 205, 214 (3d Cir. 2008). If Miles establishes such a prima facie case, "an inference of discriminatory motive arises and the burden shifts to [the City] to articulate a legitimate, non-discriminatory reason for the

---

[4] Miles contends that she did not know Lieutenant Reilly marked her late numerous times until she received printouts of the late markings in June 2014. See Resp. at 5-6. Miles, however, received a counseling memorandum that notified her about many of her late markings in October 2013. See S.J. Mot, Ex. 17, 10/30/2013 Counseling Form. Further, even if Miles did not know about the additional late markings until June 2014, she still failed to file her EEOC claim within 300 days of that date.

Miles also asserts that the City had notice of her claims against Lieutenant Reilly based on her November 2013 hardship memorandum. Resp. at 5. Miles, however, solely requested a different shift in her hardship memorandum; she did not notify the City of any improper discipline by Lieutenant Reilly. See Hardship Memorandum.

[5] It also is unlikely that Miles could show that these actions constituted adverse employment actions to support her discrimination and retaliation claims. See Cardenas v. Massey, 269 F.3d 251, 263 (3d Cir. 2001) ("an adverse employment action is one which is 'serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment'") (quoting Robinson v. City of Pittsburgh, 120 F.3d 1286, 1300 (3d Cir. 1997)).

10

adverse employment action." Id. "If [the City] does so, the inference of discrimination drops and the burden shifts back to [Miles] to show that the defendant's proffered reason is merely a pretext for intentional discrimination." Id.

The City argues that Miles cannot establish that her termination occurred under circumstances that raise an inference of gender discrimination. See S.J. Mot. at 17. Miles contends she has established such an inference based on evidence showing that male officers were not terminated for conduct unbecoming an officer or worse actions.[6] See Resp. at 8-10, Exs. F, G, H, K, I, J. This evidence, however, does not show that those male officers previously had been found guilty and disciplined for the same or similar conduct as Miles. See Resp., Exs. F, G, H, K, I; id., Ex. J, 10/26/207 Ramsey Dep. at 31-32; S.J. Mot., Ex. 13, G. Malkowski Dep. at 338-39, 347-48. Absent this important factor, those male comparators cannot be deemed substantially similar to her, and Miles cannot establish that her termination was for

---

[6] Miles has presented evidence showing that: (1) Vincent Testa was suspended for 30 days without pay and transferred for failing to report or take action against another officer for weapons tampering, covering up the conduct, directing others to falsify reports, and lying during the Internal Affairs investigation, see Resp., Ex. G; (2) Joseph Connerton was suspended for 30 days without pay, transferred, and ordered to pay restitution for regularly leaving work early with his squad and improperly using a police vehicle; see id., Ex. H; (3) the officers who left early with Connerton were reprimanded and ordered to pay restitution, see id., Ex. K; and (4) a police inspector was demoted and denied a promotion for having sexual contact in a police vehicle, see id. Ex. J, 10/26/2017 Ramsey Dep. at 31-32.

Although Miles has shown two other male officers were charged with conduct unbecoming an officer, she does not show how the charges were resolved. See id., Ex. F. Miles also has presented evidence suggesting that allegations of sexual misconduct were made against two male officers. See id. Ex. J, 10/26/207 Ramsey Dep. at 30-31, 33-34. The evidence, however, does not show whether the allegations were ever found to warrant discipline. Thus, those four officers cannot be deemed substantially similar comparators. Miles also has identified several officers who were terminated by the Police Department for felony charges, but reinstated with back pay based on an arbitration award. See id., Ex. I. Because the Police Department was required to reinstate those officers, they are not substantially similar to Miles.

11

discriminatory reasons.[7] See Taylor-Bray v. Del. Dep't of Servs. for Children, 627 F. App'x 79, 82 (3d Cir. 2015) (in context of personnel actions, "plaintiff is not required to show she is identical to the comparator, but she must show substantial similarity"); Anderson v. Haverford Coll., 868 F. Supp. 741, 745 (E.D. Pa. 1994) (to be similarly situated, the comparators must have "'engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it'") (quoting Mitchell v. Toledo Hosp., 964 F.2d 577, 583 (6th Cir. 1992)).

Even if Miles could establish a prima facie case of gender discrimination, the City has presented a legitimate nondiscriminatory reason for firing her, i.e., her repeated conduct unbecoming an officer by falsifying police records and her improper preparation and filing of an accident report. See S.J. Mot. at 18; 10/26/2017 Ramsey Dep. at 17; 12/5/2016 Arbitration Decision at 5-6. Miles asserts that the City's reasons are pretextual because: (1) she never lied: (2) the arbitrators' findings were improper because the arbitrator did not hear evidence about the discrimination and retaliation she faced; and (3) the City has not fired male police officers who engaged in similar or worse conduct. See Resp. at 8-10. Even if Miles did not lie, the Police Boards and Commissioner Ramsey determined otherwise after investigating the evidence and were entitled to discipline her based on those findings. Similarly, although Miles disputes the arbitrators' findings, her claims are based on the Police Department's and Commissioner Ramsey's decisions, not the arbitrators' decisions. Finally, Miles cannot show she was treated

---

[7] Miles also seems to argue that she was improperly terminated for filing a police report about the accident because her neighbor, a male officer, did the same thing. See Resp. at 6. Miles's neighbor, however, did not file a police report about the accident. Rather, he called 911 to inform the police department about the accident and another police officer came to the scene to prepare a report. See 10/26/2017 Ramsey Dep. at 16-17; 12/5/2015 AAA Award at 4.

12

differently than male officers because she has not presented evidence that male officers who were substantially similar to her were not terminated.

Miles's claim that she was fired based on her gender is dismissed.

D. Retaliation

The City argues that it is entitled to summary judgment on Miles's claim that she was fired in retaliation for her complaints of discrimination and retaliation.

To establish a prima facie case of retaliation, Miles must show: (1) she engaged in protected employee activity; (2) the City took adverse employment action either after or contemporaneous with her protected conduct; and (3) a causal connection existed between her protected activity and the Police Department's adverse action. See Marra v. Phila. Hous. Auth., 497 F.3d 286, 300 (3d Cir. 2007). If Miles establishes a prima facie case, the City must "articulate some legitimate, non-retaliatory reason for the adverse employment action." Id. Miles then must show, by a preponderance of the evidence, that the City's reason is false and "retaliation was the real reason for the adverse employment action." Id.

The City contends that Miles has failed to show a causal connection between her protected activity and termination. Miles contends there is a causal connection because Commissioner Ramsey fired her, despite the Police Board's recommendation for a 20-day suspension, knowing of her complaints of retaliation. Resp. at 11. Even assuming Commissioner Ramsey knew about Miles's complaints of retaliation in her March 2015 memorandum to her Commanding Officer,[8] he did not terminate her until almost seven months later, which is too removed in time to establish a retaliatory motive. See Williams v. Phila.

---

[8] Although Commissioner Ramsey "vaguely recalled" Miles raising issues about Winkler, he said he did not remember any other complaints. 10/26/2017 Ramsey Dep. at 14.

13

Hous. Auth., 380 F.3d 751, 760-61 (3d Cir. 2004) (temporal proximity alone was insufficient to establish causal connection where two months elapsed between protected activity and adverse action); Deans v. Kennedy House, Inc., 587 F. App'x 731, 735 (3d Cir. 2014) (termination that occurred two months after plaintiff filed EEOC charges was not unduly suggestive of retaliation). Further, during that time, the IAD was investigating Miles's allegations about Winkler. 10/02/15 Internal Investigation IAD #15-1038. Nevertheless, even if Miles could establish a prima facie case of retaliation, the City has provided legitimate, non-retaliatory reasons for Miles's termination, and Miles fails to show that those reasons are false. See supra at 12; Resp. at 11.

Miles's claim that she was fired in retaliation for her complaints against the City is dismissed.

### E. Hostile Work Environment

The City argues it is entitled to summary judgment on Miles's claims that she was subject to a retaliatory and discriminatory hostile work environment because she cannot show that she was subject to severe and pervasive conduct that detrimentally impacted her or would have detrimentally impacted a reasonable person.[9]

To prove her hostile work environment claim, Miles must show that: (1) she suffered severe and pervasive discrimination or retaliation; (2) the discrimination or retaliation detrimentally affected her and would have detrimentally affected a reasonable person in her position; and (3) the discrimination and retaliation can be attributed to the City. See Castleberry v. STI Grp., 863 F.3d 259, 263 (3d Cir. 2017); see also Morgan, 536 U.S. at 116 (plaintiff must show "the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is

---

[9] The City addresses Miles's retaliation and hostile work environment claims together. I have separated the two claims for ease of discussion.

14

sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive working environment").

Miles contends she was subject to severe and pervasive discrimination and retaliation because (1) the City delayed her reinstatement as a police officer following the arbitrator's May 2013 decision; (2) she was disciplined by a defendant in her 2011 lawsuit for being AWOL; (3) Lieutenant Reilly denied her overtime, sick checked her for no reason, marked her late for no reason, and otherwise harassed her; (4) the IAD changed its finding about the civil claims made against her from exonerated to sustained and repeatedly refused to take her reports about domestic abuse by Winkler; and (5) she was terminated after the Board recommended a 20-day suspension. Resp. at 6-7. Those actions, even considered in combination, did not amount to severe and pervasive discriminatory or retaliatory conduct that detrimentally affected Miles or would have detrimentally affected a reasonable person in her position.

Although the arbitrator who considered Miles's 2011 termination directed that she be reinstated, he did not order it done immediately. See 5/8/2013 AAA Award at 10. Rather, he directed the parties to confer about the best placement for Miles and stated that Miles must complete any necessary certifications and requirements before being reinstated. See id. The Police Department reinstated Miles on June 26, 2013, approximately one month and 18 days after the arbitrator's award. Miles has failed to present any evidence showing that the parties had agreed upon her placement and she had satisfied all of the requirements for her reinstatement substantially before that date.

Miles testified that she had to obtain an attorney to dispute the AWOL charges brought against her after her reinstatement. See 10/26/2017 Miles Dep. at 57. She admitted, however, that the charges were dismissed before a PBI hearing was even held. See id. at 57-58. A

15

reasonable jury could not find that the AWOL charges were severe actions that detrimentally impacted Miles or would have detrimentally affected a reasonable person in her position.

Miles also was never disciplined for any of the alleged improper actions by Lieutenant Reilly and she has failed to present any evidence other than her speculative testimony and inadmissible hearsay to show that his actions were unwarranted. See 10/26/2017 Miles Dep. at 9 (she was not disciplined for sick check violations), 14 (she believed Reilly was going to ticket her car based on another officer's statements), 15 (she believed Reilly was denying her overtime based on statements of another officer), 25 (she was never disciplined for being late), 31 (she believed Officer Burns was not marked late based on conversations with him and others); see also id. at 15 (her inspection sticker was expired). Although she received at least three counseling forms, two were given by officers other than Reilly. See 12/14/2013 Memorandum; 10/20/2013 Counseling Form. Those forms also are used for training employees and cannot result in disciplinary action, such as a loss in pay, transfer, suspension, or demotion. See Torres v. Deblasis, 959 F. Supp. 2d 772, 780-81 (E.D. Pa. 2013). A reasonable jury could not find from this evidence that Reilly's actions constituted severe and pervasive conduct that would have detrimentally affected Miles or a reasonable person in her position. See Podobnik v. U.S. Postal Serv., 409 F.3d 584, 594 (3d Cir. 2005) (non-moving "party must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue"); Petrucelli v. Bohringer & Ratzinger, 48 F.3d 1298, 1308 (3d Cir. 1995) (existence of some evidence by non-moving party "will not be sufficient to support a denial of a motion for summary judgment; there must be enough evidence to enable a jury to reasonably find for the non-moving party on the issue"); Rosati v. Colello, 94 F. Supp. 3d 704, 714-18 (E.D. Pa. 2015)

16

(dismissing claims of discrimination, retaliation, and hostile work environment that were supported only by plaintiff's testimony and inadmissible hearsay).

Miles testified that after being notified by the IAD that she was exonerated of the false arrest and stolen property civil charges brought against her, she received a letter stating the IAD had sustained those findings. See 10/26/2017 Miles Dep. at 72-75. Miles, however, has not presented that letter. She also testified that she was later told the letter may have been a mistake and she received no other information or discipline. See id.

Although Miles said that the IAD initially would not accept her complaints against Winkler, the IAD advised her of the proper way to make her complaints and Miles eventually followed that advice. See id. at 43-48. Upon receiving that complaint, the IAD also formally interviewed Miles, albeit not as fully as she would have liked. See id. at 47-48, 64. The IAD, however, conducted a full investigation several months later. See 10/02/2015 Internal Investigation. A reasonable jury could not find from this evidence that the IAD's actions amounted to severe and pervasive misconduct that detrimentally impacted Miles or would have detrimentally impacted a reasonable person in her position.

Lastly, because the City has presented legitimate reasons for Miles's termination and Miles has failed to establish that those reasons were false or pretextual, her termination also does not support her hostile work environment claim. See supra at 12.

Miles's hostile work environment claim is dismissed.

F. Equal Protection Claim Against the City

The City argues that Miles's Equal Protection Claim must be dismissed because she has failed to produce any evidence showing it had a policy or practice of discrimination or retaliation towards women.

17

To prove her claim against the City, Miles must show that it had a policy or custom that injured her. See Bd. of Cty. Comm'rs v. Brown, 520 U.S. 397, 403-04 (1997) (citing Monell v. Dept. of Soc. Servs., 436 U.S. 658, 694 (1978)). Miles can establish an unlawful policy by showing that a decisionmaker with final authority formally issued the policy through a policy statement, rule, or other means. See Andrews v. City of Phila., 895 F.2d 1469, 1480 (3d Cir. 1990), superseded in part by statute, Civil Rights Act of 1991, Pub. L. No. 102-166, 105 Stat. 1072. Miles can establish a custom by showing a permanent or well-settled course of conduct or practice by municipal officials. See id. "An isolated incident or series of incidents" alone does not "establish a settled municipal custom." See King v. City of Phila., No. 99-6303, 2002 WL 1277329, *16 (E.D. Pa. June 4, 2002).

Miles contends she has established an extensive custom of gender-based discrimination, retaliation, and deliberate indifference by the City. See Resp. at 12. She explains, without citation, that "[m]ale officers are disciplined less harshly and several male supervisors are active sexual predators." Id. Miles cites only herself to show how women are treated, and has failed to present any evidence that male officers are regularly disciplined less harshly than she was for committing similar misconduct on two separate occasions. See supra at 11. Miles therefore has failed to show that the City had a well-settled course of conduct or practice of discriminating and retaliating against women that caused her to be terminated.

Miles's Equal Protection claim against the City is dismissed.

### G. Equal Protection Claim Against Commissioner Ramsey

The City also argues that Commissioner Ramsey is entitled to qualified immunity from Miles's claims because she has failed to show any constitutional violation. I agree. See Pearson v. Callahan, 555 U.S. 223, 231-32 (2009) (doctrine of qualified immunity protects government

18

officials from liability for civil damages unless plaintiff can show that they violated clearly established constitutional right).

Miles's Equal Protection claim against Commissioner Ramsey is dismissed.

An appropriate order follows.